MAGNOLIA PETROLEUM COMPANY ET AL. V. NEW PROCESS PRODUCTION COMPANY ET AL.

No. 7241. Decided April 28, 1937.
Rehearing overruled June 23, 1937.
(104 S. W., 2d Series, 1106.)

*Powell, Wirtz, Rauhut & Gideon, Greenwood, Moody & Robertson,* all of Austin, *W. H. Francis* and *Walace Hawkins,* both of Dallas, for relators.

Where the Supreme Court had held in a former appeal that an order of the Railroad Commission permitting an oil company to drill additional wells should be cancelled, the Commission was without jurisdiction to later issue a permit and reopen said wells, as the former decision of the Supreme Court was res adjudicata and binding upon said Commission and that writs of prohibition and injunction should issue to prevent their granting said permit. Halbrook v. Quinn, 286 S. W. 954; Wells v. Littlefield, 62 Texas 28.

*William McCraw,* Attorney General, *W. J. (Dick) Holt, Harry S. Pollard,* Assistants Attorney General, *Golden & Croley,* of Dallas, and *Smith, Goldsmith & Bagby,* of Austin, for respondent.

The action of the Railroad Commission in entering and issuing to the New Process Production Company a permit order authorizing the drilling and operation of certain wells, as special exceptions to Rule 37 applicable to the East Texas Oil Fields does not interfere with or infringe upon the judgment of the Supreme Court entered in a prior proceeding regarding said wells, or of the jurisdiction of the Supreme Court, therefore it should not issue the writs of prohibition and injunction applied for by relators. Railroad Commission v. Bass, 10 S. W. (2d) 586; State v. Jarmon, 25 S. W. (2d) 937; Bennett v. Sun Oil Co., 126 Texas 269, 84 S. W. (2d) 693; Whitaker v. Dillard, 81 Texas 359, 16 S. W. (2d) 1084.

MR. JUSTICE CRITZ delivered the opinion of the Court.

On and prior to March 8, 1934, New Process Production Company owned a valid oil, gas, and mineral lease on a long, narrow strip of land consisting of 8.61 acres in Gregg County, Texas, on which it had five producing oil wells. Magnolia Petroleum Company owned a valid oil, gas, and mineral lease on a 30 acre tract abutting the 8.61 acre tract on the north, and General Crude Oil Company and Sun Oil Company owned a valid oil, gas, and mineral lease on a 50 acre tract of land abutting the 8.61 acre tract on the south. We understand that both the 30 and the 50 acre tracts have producing oil wells thereon. Also, we understand that the ownership of the leases above mentioned has existed unchanged from, on, and prior to March 8, 1934, to this date.

On March 8, 1934, New Process Production Company filed with the Railroad Commission an application to drill three additional wells on the above 8.61 acre tract. Notice of this application was duly given, and on May 7, 1934, the Railroad Commission entered its order denying the same. This order was never appealed from.

After the entering of the order of May 7, 1934, denying the New Process Production Company a permit to drill three additional wells on the above 8.61 acre tract of land, that company again presented the matter of drilling such wells to the Railroad Commission without any motion, additional application, or notices, and on June 29, 1934, the Commission without a hearing entered an order granting the permit which had been refused on May 7, 1934.

After the entry of the order of June 29, 1934, permitting the drilling of the three additional wells on the 8.61 acre tract, supra, Magnolia Petroleum Company, General Crude Oil Company, and Sun Oil Company, as abutting lease owners and parties at interest, filed suit in the district court of Travis County against New Process Production Company and the Railroad Commission to annul and set aside the above order of June 29, 1934, and to prohibit and enjoin the drilling and operation of the three wells thereby permitted. That suit was filed as a statutory appeal from the order thereby attacked.

The above cause was finally tried in the district court and resulted in a judgment upholding the order of the Railroad Commission of June 29, 1934, and permitting the drilling and operation of the three wells thereby allowed.

Magnolia Petroleum Company et al. appealed from the above judgment to the Court of Civil Appeals for the Third District at Austin, but on equalization of the dockets of the several

Courts of Civil Appeals the case was transferred to the Court of Civil Appeals at Amarillo. On final hearing in that court the judgment of the district court was reversed and the cause remanded generally. 90 S. W. (2d) 659. Magnolia Petroleum Company et al. prosecuted writ of error to this Court from the judgment of the Court of Civil Appeals on the ground that that court erred in not rendering judgment for them in place of remanding the cause generally. The writ was granted, and on final hearing in this Court that part of the judgment of the Court of Civil Appeals which reversed the judgment of the district court was affirmed, but that part of such judgment which remanded the cause generally was reversed, and judgment was here entered rendering the cause for Magnolia Petroleum Company et al. 128 Texas 189, 96 S. W. (2d) 273. The judgment as rendered by this Court cancelled and annulled the order of the Railroad Commission of June 29, 1934, and enjoined the drilling and operation of the three wells thereby permitted. In this connection, it seems that such wells had already been drilled and were being operated at the time this Court rendered its judgment. At this point we deem it expedient to quote the following from the judgment of this Court:

"That said judgment be here now entered for the Plaintiffs in Error herein, Magnolia Petroleum Company, the General Crude Oil Company, and the Sun Oil Company, cancelling and annulling the order entered by the Railroad Commission of Texas granting the application of the New Process Production Company, for a permit to drill the three additional wells in controversy, and the Defendant in Error, New Process Production Company, its servants, agents, employees and assigns are perpetually enjoined from drilling any wells under said order of the Railroad Commission of Texas and from operating any wells drilled under said order of the Railroad Commission, and from producing oil from any wells that may have been drilled under said order of the Railroad Commission of Texas, and it is accordingly so ordered."

After the judgment of this Court became final New Process Production Company closed the three wells thereby enjoined and ceased to produce oil therefrom.

After the happening of the above events, and at some date prior to February 6, 1937, New Process Production Company again made application to the Railroad Commission for a permit to drill and operate the three wells which had been denied by the order of the Railroad Commission of May 7, 1934, and which had been closed by the judgment and injunction of this

Court. Of course such application amounted to a petition for an exception to oil and gas rule No. 37 as applied to the East Texas Oil Field. Sufficient notice of this last application was duly given as required by law, and on March 1, 1937, the Railroad Commission entered its order permitting the drilling and operation of the three wells above described. We understand that such wells are now in operation.

After the Railroad Commission entered its order of March 1, 1937, granting New Process Production Company a permit to drill the three wells above mentioned and here involved, Magnolia Petroleum Company and Sun Oil Company, who will hereafter be designated relators, after obtaining proper permission, filed in this Court application for writs of prohibition and injunction to prohibit and enjoin New Process Production Company from drilling or operating the three wells allowed by the above Railroad Commission order of March 1, 1937. The case has been duly submitted, briefed, and argued in this Court.

If this Court should prohibit and enjoin the operation of the three wells allowed by the Railroad Commission order of March 1, 1937, it would have to do so on a ruling that such order was entered, and such wells are being operated thereunder, in violation of the judgment of this Court in the former suit. A 'decision of that question involves the ascertainment of what we decided and decreed in such suit. We will now proceed to discuss and decide that matter.

When we come to examine the opinion of this Court in the former case, we find that it in effect decided:

1. That the Railroad Commission acts as a quasi-judicial body in the matter of ascertaining and finding the facts preliminary to the making of an order refusing an application to drill an oil well as an exception to Rule 37.

2. That the Railroad Commission has power to issue and cause process to be served by its officers, and to enter orders that are final, unless set aside on appeal, and to enforce its judgments which govern valuable property rights.

3. That the order of the Railroad Commission of date May 7, 1934, denying a permit to drill the three additional wells here involved, was a final order, and the Commission's further jurisdiction thereof, under the law, could not be invoked except upon motion, notice, and hearing, which was not had when the order of June 29, 1934, was entered.

4. That the purported order of the Railroad Commission of June 29, 1934, wherein New Process Production Company

was permitted to drill and operate the three wells which had been denied by the order of May 7, 1934, was a void order; not because the Railroad Commission was without potential jurisdiction to enter it, but because such order had been entered without motion, notice, and hearing as required by law.

5. That the three wells which had been operated by New Process Production Company, and were then being operated under authority of the void order of June 29, 1934, were illegal wells, and were being illegally operated because drilled and operated under such void order.

6. That since the three wells drilled under the void order of June 29, 1934, were illegal wells, and were being unlawfully operated, such operation should be enjoined.

After making the above rulings this Court entered its judgment and decree by the terms of which it in all things cancelled and annulled the purported order of June 29, 1934, and enjoined New Process Production Company, its servants, agents, employees, and assigns from drilling any wells thereunder and from producing any oil from any wells that may have been drilled thereunder. In this connection we call particular attention to the fact that this Court did not absolutely enjoin, or attempt to absolutely enjoin, the operation of three additional wells on the 8.61 acre tract for all time. It simply enjoined the operation of any wells drilled under the void order of June 29, 1934.

At this point we pause to note that the opinion of this Court, after making the rulings above set out, contains the statement to the effect that the Court of Civil Appeals correctly decided the other questions presented. The Court of Civil Appeals in its opinion, after making rulings in substance the same as those made by this Court, went further and, in effect, held that the evidence was not sufficient to show that New Process Production Company was entitled to drill and operate the three wells allowed by the Railroad Commission's Order of June 29, 1934, as an exception to oil and gas rule No. 37. It is our opinion that since no motion, notice, or hearing was had prior to the entry of the order just mentioned the Railroad Commission was without jurisdiction to try or determine any issue of fact. Of course, if the Commission did not have jurisdiction to try such issue, the courts obtained none by appeal. The very basis for our judgment of rendition was our ruling that the order of June 29, 1934, was void for lack of motion, notice, and hearing. We mention this matter to show that by our former opinion we did not really pass on the question as to whether the facts presented

to the district court showed a meritorious case for New Process Production Company.

1 From what has been said above, it is evident that the order of the Railroad Commission of May 7, 1934, denying the right to drill and operate these wells, was never appealed from, and therefore never became operative as the judgment of this or any other court. It is true that we held that such order was a final order, but we only passed thereon incidentally in determining the validity of the order of June 29, 1934. This last mentioned order was the one brought before us for review by appeal from the order of the Commission. From all that has been said it is evident that we hold that the order of the Commission of March 1, 1937, was not entered in violation of any order or judgment of this Court. This ruling alone would result in the dismissal of this application for want of jurisdiction to grant the relief prayed for.

If we properly interpret the briefs and arguments of counsel for relators, they contend that since the order of May 7, 1934, was held by this Court to be a final order, the Commission is without power to alter or change it, because an administrative body can not set aside or nullify the judgment of a court of competent jurisdiction. We think we have already determined this question adversely to relators' contention.

2 If we further properly interpret relators' briefs and arguments, they contend that when the Commission once has a proper and lawful hearing on an application to drill an oil well as an exception to Rule 37, and duly enters an order refusing such application, and such order of refusal is not appealed from, it becomes final, in the sense and to the extent that the Commission is without jurisdiction to thereafter reconsider such matter and grant the permit once refused, unless there is a showing of changed conditions,—that is, unless it is shown that conditions have changed since the original order of refusal was entered. Counsel for New Process Production Company, and the Attorney General and his assistants, representing the Railroad Commission, combat the above proposition and advance the opposite contention, to the effect that a mere order of the Commission denying a permit to drill a well as an exception to Rule 37 is not final to the extent of depriving the Commission of jurisdiction to reconsider it, even though the factual basis for such reconsideration remains unchanged. After a careful study of the pertinent statutes and the rulings of the Commission on the question for years, we have reached the conclusion that it ought to be held that the right of review, in spite of the absence of changed conditions, should be upheld.

Further discussing the above matter, we think Judge SHARP'S opinion in the former case above reviewed is authority in support thereof. A reading of that opinion will disclose that it was not there held, or even intimated, that the Commission was without potential jurisdiction to set aside or change its order of May 7, 1934, in the absence of changed conditions. In fact, nothing was said about changed conditions. The opinion simply holds that such order could not be reviewed except on motion, notice, and hearing. By very clear implication the opinion holds that the order of May 7, 1934, could have been reviewed if proper motion, notice, and hearing had been had. At this point we deem it expedient to quote as follows from Judge SHARP'S opinion:

"Rule 37 provides a spacing rule to govern the drilling of wells and certain exceptions thereto. The rule further provides that: 'Such exception shall be granted only after at least ten days notice to all adjacent lessees affected thereby has been given, and after public hearing at which all interested parties may appear and be heard, and after the Commission has determined that an exception to such rule is necessary either to prevent waste, or to protect the property belonging to applicant from confiscation.'

"It is well settled that under the general provisions of the law the Railroad Commission acts in a quasi-judicial capacity. See Articles 6024, 6025, 6029, 6033, 6036, and 6036a, Vernon's Ann. Civ. St. The Railroad Commission has the power to issue and cause process to be served by its own officers, to enter orders which are final, unless set aside on appeal, and to enforce its judgments which govern valuable property rights. Brown et al. v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 99 A. L. R. 1107, and authorities cited.

"The order entered by the Railroad Commission on May 7, 1934, denying the permit to drill the three additional wells, was a final order, and its further jurisdiction of that order, under the law, could not be invoked, except upon motion and hearing, which the Court of Civil Appeals found was not had. This Court has repeatedly held that an order of the Railroad Commission, regular on its face, is presumed to be valid, and will be enforced unless set aside in a direct proceeding brought for that purpose; and, furthermore, it is not subject to collateral attack. West Texas Compress & Warehouse Co. v. Panhandle & S. F. Ry. Co., (Tex. Com. App.) 15 S. W. (2d) 558; Texas Steel Co. v. Fort Worth & D. C. Ry. Co., 120 Texas 597, 40 S. W. (2d) 78, and cases cited. It appearing to be unquestioned that the order entered on May 7, 1934, by the Railroad Commission, denying

the permit to drill the three additional wells, is valid, and that it has never been set aside in a manner provided for by law, the Court of Civil Appeals should have reversed and rendered judgment in favor of plaintiffs in error in this cause. Article 1856, Vernon's Ann. Civ. St.; Sovereign Camp, W. O. W., v. Patton, 117 Texas 1, 295 S. W. 913; Gay v. Jackman, (Tex. Com. App.) 254 S. W. 927."

Further discussing the above matter, the assertion is made by the respondents in this case, and not denied by the relators, that the Railroad Commission has for years, and in hundreds of instances, construed our oil and gas conservation laws as giving it the right to review orders refusing well permits, regardless of the question of changed conditions. Vast property rights have become vested by orders entered in such reviewals. An examination of our conservation statutes discloses that they do not in any manner directly deal with such question, but are open to construction in regard thereto. Under such a record we think in this instance we should sustain the departmental ruling. Neubert v. Chicago, etc., Ry. Co., 116 Texas 644, 296 S. W. 1090; Moorman v. Terrell, Comptroller, 109 Texas 173, 202 S. W. 727; Tolleson v. Rogan, Land Commissioner, 96 Texas 424, 73 S. W. 520.

3 Finally, we desire to say that we have already demonstrated that in this cause we are not dealing with the right or power of the Railroad Commission to hear and grant an application for a well permit once refused by the judgment of a court of competent jurisdiction after passing on the merits of the case. We will say, however, that we are of the opinion that the Railroad Commission is without power to review or set aside judicial orders and decrees. In such instances the Commission can only grant an application for a well where there is a showing of changed conditions.

It may be argued that under the above ruling there can be no finality to litigation in the courts where the refusal of well permits are involved. In the sense that such judgments do not absolutely determine and foreclose the matter for all time in spite of changed conditions, this is true; but in the sense that such judgments do determine rights up to the time the Commission acted, and thereafter until there is a change of conditions, such judgments contain every element of finality. In a sense, the rule here announced is the same as the rule involved where the custody of a child is at issue. According to the settled law a person is not estopped from claiming custody and control of his child because of a former judgment award-

ing such custody and control to another, where conditions have materially changed since the former judgment. In other words, estoppel by former judgment continues only so long as circumstances or conditions remain the same as at the time of the former trial. Smith v. Long, 181 S. W. 478, and authorities there cited. In this connection it will be noted that we have held above that court judgments determine the rights up to the time the Commission acted and thereafter until there is a change of conditions. This must be the rule as regards the refusal of well permits, because the Court only reviews the action of the Commission; therefore, when one of these cases reaches the Court it must be tried on conditions that existed at the time the Commission acted.

It can not be said that to allow the Railroad Commission to exercise original jurisdiction to pass on the question of changed conditions, where applications for well permits have been refused as the result of court judgments, would be to allow the Commission to pass on and nullify the judgments of courts, because, as already shown, such judgments only adjudicate such matters up to the time the Commission acted, and thereafter so long as conditions remain unchanged. If conditions change, rights change, and the governing statutes place the matter of ascertaining such rights and determining the facts relating thereto in the first instance under the jurisdiction of the Railroad Commission. If it rules arbitrarily or fraudulently its rulings can be corrected by statutory appeal to the district court, and this is an exclusive remedy.

It is evident that it ought to be held that the Railroad Commission has exclusive original jurisdiction to determine the matter of changed conditions, because, when the ruling of the Commission is appealed to the district court of Travis County, such court is not confined to the evidence heard by the Commission, but may hear other proper evidence bearing on the issues involved. Of course the judicial inquiry must be confined to conditions as they existed at the time the Commission acted. This must be true because it is the ruling of the Commission that is under review.

For the reasons stated, the application for writs of injunction and prohibition, filed herein by Magnolia Petroleum Company et al., is dismissed without prejudice to any right they may have to contest the Commission order of March 1, 1937, by statutory appeal to the district court of Travis County, Texas.

Opinion delivered April 28, 1937.

Rehearing overruled June 23, 1937.